Janet M. Herold
Regional Solicitor
Boris Orlov, Attorney
(California State Bar Number 223532)
Charles C. Song, Attorney
(California State Bar Number 204497)
Office of the Solicitor
United States Department of Labor
350 S. Figueroa St., Suite 370
Los Angeles, California 90071-1202
Telephone: (213) 894-5410
Facsimile:  (213) 894-2064
Email: orlov.boris@dol.gov

Attorneys for the Plaintiff

FILED
Clerk
District Court

MAR 29 2021

for the Northern Mariana Islands
by _____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| Milton Al Stewart,<br>   Secretary of Labor,<br>   United States Department of Labor,<br><br>                    Plaintiff,<br><br>   v.<br><br>**Imperial Pacific International Holdings, Ltd., Imperial Pacific International (CNMI), LLC**<br><br>                    Defendants. | Case No. CV 19-00007<br><br>FIRST AMENDMENT TO CONSENT JUDGMENT |

Plaintiff, Milton Al Stewart, Secretary of Labor, United States Department of Labor (the "Secretary") and Defendants Imperial Pacific International Holdings, Ltd, Imperial Pacific International (CNMI), LLC, (collectively IPI), respectfully request this Court to modify the Consent Judgment that it approved on April 11, 2019 pursuant to the terms of this Stipulated First Amendment to Consent Judgment ("First Amended Consent Judgment").

The Court issued an Order Finding Civil Contempt against Defendants including Cuie Lie Jie on January 21, 2021 (ECF 19) and ordered, *inter alia*, the Defendants to purge contempt by paying unpaid payroll among other orders regarding Defendants treatment of employees. The Court issued an Order (ECF 50) appointing a Receiver to purge contempt. Following the entry of the Order Finding Civil Contempt and Imposing Stop Work Order (ECF 19) Defendants have substantially come current on the payment of their payroll and are in the process of determining the full extent of their liability to their employees from June 1 to February 28, 2021.

## 1. Outstanding Amount Due.

Defendants represent and agree that at least $47,856 in wages are still due to IPI employees. Defendants admit that they owe the funds to the employees and have failed to purge contempt as to at least $47,856 of wages. Defendants shall work with Plaintiff in confirming the exact amount of any and all Fair Labor Standards Act liability that remains unpaid to its workers. If additional liability is found, the parties shall enter into a further amendment of the Consent Judgment providing for the payment of the full amount owed.

The total amount owed under the Consent Judgment was $3,360,000.00. See, Consent Judgment, (ECF 2), at p. 4, ll. 13.5.

Defendants have made the following payments since March of 2019 toward payment of the Consent Judgment:

| Due Date | Payment Amount |
| --- | --- |
| March 27, 2019 | $300,000.00 - PAID |
| May 28, 2020 | $250,000.00 – PAID |
| January 12, 2021 | $196,632.28 - PAID |
| March 5, 2021 | $1,182,793.00 - PAID |
| TOTAL | $1,929,425.28 |

Defendants affirm and consent to the modification of the amounts due under the Consent Judgment, calculated as of the date of this First Amended Consent Judgment, as follows: (A) $1,430,574.72 remaining from the April 11, 2019 Consent Judgment plus $47,856 wages currently described above , for a total amount of $1,478,430.72 due , and (B) an additional an amount to be determined in unpaid wages for periods 21-26 and 1-3 and prior pay periods, which amount the parties agree shall be added to the amount of wages due under the Consent Judgment by a future stipulated amendment .

To move toward purging contempt and to pay the amounts remaining on the April 11, 2019 Consent Judgment and the unpaid total for work periods 21-26 and 1-3, Defendants are ordered to make the following payments:

| | |
|---|---|
| April 1, 2021 | $164,270.08 |
| May 1, 2021 | $164,270.08 |
| Jun 1, 2021 | $164,270.08 |
| July 1, 2021 | $164,270.08 |
| August 1, 2021 | $164,270.08 |
| September 1, 2021 | $164,270.08 |
| October 1, 2021 | $164,270.08 |
| November 1, 2021 | $164,270.08 |
| December 1, 2021 | $164,270.08 |
| TOTAL | $1,478,430.08 |

In addition, IPI owes additional payments to its employees that it will pay directly to its employees outside of this agreement in eight equal installments.

2. Additional Security To Be Provided.

In addition, the Court ordered Defendants to provide security against future payroll violations to the Department of Labor in the amount of $800,000.00. (ECF

**AMENDED CONSENT JUDGMENT**　　　　　　　　　　　　　　　　　**Page 3 of 10**

27). Defendants paid $250,000.00 on May 28, 2021 to the Department of Labor to be used as security for the payment of currents wages (the "Security Deposit"). IPI represents to the Secretary and to the Court that its payroll obligations are currently significantly smaller in part because of the stop work order on construction. Before the construction stop work order can be lifted, IPI will deposit an additional amount with the Department of Labor to ensure it holds at least three months of anticipated payroll. At any one time, the amount held by the Department of Labor as the Security Deposit shall not be less than three (3) months of anticipated payroll obligations as determined by IPI and subject to verification by the Department of Labor. If the amount held in the Security Deposit falls below the required amount and is not replenished by IPI within ten (10) business days, the construction stop work order will be automatically re-imposed upon fifteen (15) days' written notice to IPI and to the Court by the Department of Labor. IPI may bring a motion to oppose the stay.

The Security Deposit will be held for a period of one year from the entry of this First Amended Judgment to ensure against any failure by IPI to meet its payroll obligations during this year. At the end of the one-year period the amount remaining shall be applied by the Department to any amounts due to the Department by the Defendants for any case investigated by the Wage and Hour Division of the U.S. Department of Labor. IPI is still under an obligation to cover its regular payroll obligations and not rely on this account to cover any shortfalls.

As security for Defendants' monetary liability of $1,478,430.08, Defendants offer the Flame Tree Terrace property. The leasehold for this property is held by Defendants' affiliate, East Gain Global (CNMI) Ltd. Defendants' affiliate, East Gain Global (CNMI), Ltd., a signatory to this First Amended Judgment, expressly agrees and consents to the Consent Judgment and the First Amended Judgment being recorded as first lien against the leasehold parcels of property commonly known as the Flame Tree Terrace identified in Exhibit A attached hereto

**AMENDED CONSENT JUDGMENT** Page 4 of 10

(collectively referred to as the "Flame Tree Terrace Parcels"). Defendants and East Gain Global (CNMI) will cooperate with the Secretary to execute and deliver any and all documents required by Security Title. Inc., including but not limited to all necessary corporate resolutions, consents and approvals, within five (5) days after the entry of this consent judgment, to issue a title insurance policy insuring a first lien position for the lienholder for the sum of $1,478,430.08. Action and Consent of Shareholders for East Gain Global (CNMI), Ltd is attached hereto as Exhibit B.

If Flame Tree is not available or if its value is insufficient to cover the full amount of the Consent Judgment as amended, Defendants will identify to the Secretary additional security in a form and of a value acceptable to the Secretary within (30) days of entry of this Amended Consent Judgment. If the Secretary accepts the security so identified the parties shall take such actions as are reasonably required to perfect in the Secretary, the security interest. IPI will pay for title reports and the cost of title insurance together with any endorsements required by the Secretary, on the Flame Tree Terrace Parcels and any property as requested by the Secretary in the event Flame Tree Terrace is not available or its value is insufficient. If the Secretary rejects the security offered or if the parties are unable to agree on how to perfect the interest, the matter shall be submitted to the Court by a joint statement each party setting forth its position in no more than five pages, for the Court to determine whether the value of the security offered is sufficient to secure the full amount due under this judgment and order additional security if the Court deems appropriate. Until the security interest is perfected the Defendants shall not sell or transfer or encumber any assets not in the normal course of their business and provide notice to the Secretary of at least 15 days before transferring or encumbering any property in the normal course of business valued in excess of $25,000. To secure all amounts due under the Consent Judgment and this First Amended Consent Judgment, Defendants agree to cooperate with the Secretary in any manner necessary to perfect the security

**AMENDED CONSENT JUDGMENT** Page 5 of 10

interests.[1]

C. Event of Default.

In the event of the nonreceipt of a payment from Defendants by the Secretary, the Secretary shall give written notice of the nonreceipt of payment to Defendants. The Defendants shall then have ten (10) business days from the date of receipt of the notice that payment was not received to trace the payment if it was sent and an additional twenty (20) calendar days to resolve any issues with a wire transfer if they provide proof to the Secretary that the payment was sent by wire. If a payment was not sent Defendants have ten (10) to deliver the missing payment. The failure of the Defendants to deliver payment within the time permitted by this section shall constitute an event of default and the Secretary may then declare a default of this Amended Consent Judgment by filing a Notice of Default with the Court and providing a copy of said notice to Defendants.

In the event default is declared by the Secretary, the full gross amount outstanding and due under this Consent Judgment as amended, plus post-judgment interest at the rate applicable to federal judgments from the date this First Amended Consent Judgment is entered until the monetary amounts due under this First Amended Consent Judgment are paid in full, shall become immediately due to the U.S. Department of Labor.

If Defendants fail to cure the default within five (5) business days form the filing of the Notice of Default the Secretary shall notify the Court of the failure to cure such default(s) by filing a Notice of Failure to Cure Default with the Court and providing a copy of said notice to the Defendants. Within ten (10) business days of the date of the filing of the Notice of Failure to Cure Default the Receiver

---

[1] The Secretary and CNMI Department of Finance, Division of Revenue and Taxation have filed a separate stipulation with the Court under which CNMI Department of Finance has agreed to subordinate its claims and liens to the Secretary's claims on behalf of employees in the amount of $1,500,000.

**AMENDED CONSENT JUDGMENT** Page 6 of 10

is authorized to exercise all powers authorized under the Order Appointing Receiver and Setting Terms of Receivership [ECF 50], to sell Defendants' assets, including but not limited to the Flame Tree Terrace Parcels, to pay the Total Judgment Amount, and the Receiver's costs and fees.

The receivership ordered by the Court on March 10, 2021 (ECF 50) will remain suspended until such time the Secretary files a Notice of Failure to Cure Default as provided hereinabove, and Defendants fail to cure such default within ten (10) business days of the filing of the Notice of Failure to Cure Default. The Court will reinstate the receivership to enforce compliance with this judgment if Defendants fail to comply with this judgment and fail to cure within ten (10) business days after the Notice of Failure to Cure Default is filed. Defendants and East Gain Global (CMNI), Ltd. hereby waive all objections and explicitly consent to the reinstatement of the receivership under these terms.

Should Defendants fully comply with this First Amended Consent Judgment and make all of the payments required hereunder, then on December 1, 2021, the Secretary shall cause to be filed a Satisfaction of Judgment.

The Court directs the entry of this modification to the April 11, 2019, Consent Judgment as a final order.

DATED this 29th day of March, 2021.

RAMONA V. MANGLONA
Chief Judge

For the Defendants:

The Defendants hereby consent to the entry of this Amended Consent Judgment, and waive notice by the Clerk of Court:

For: Imperial Pacific International Holdings, Ltd.

By: _____     3/23/21
Name: Cui Li Jie                  Date
Title: Chairperson


For: Imperial Pacific International (CNMI), LLC

By: _____
Name: Ray Yumel                   Date
Title: Chief Executive Officer


Agreed and Consented to by:

EAST GAIN GLOBAL (CNMI) LTD.

By: _____
Name:
Title:

For the Defendants:

The Defendants hereby consent to the entry of this Amended Consent Judgment, and waive notice by the Clerk of Court:

For: Imperial Pacific International Holdings, Ltd.

By: _____          _____
Name: Cui Li Jie                                                              Date
Title: Chairperson


For: Imperial Pacific International (CNMI), LLC

By: _____          3/23/2021
Name: Ray Yumel                                                          Date
Title: Chief Executive Officer


Agreed and Consented to by:

EAST GAIN GLOBAL (CNMI) LTD.

By: _____
Name:
Title:

For the Defendants:

The Defendants hereby consent to the entry of this Amended Consent Judgment. and waive notice by the Clerk of Court:

For: Imperial Pacific International Holdings. Ltd.

By: _____    _____
Name: Cui Li Jie                              Date
Title: Chairperson

For: Imperial Pacific International (CNMI), LLC

By: _____    _____
Name: Ray Yumel                           Date
Title: Chief Executive Officer

Agreed and Consented to by:

EAST GAIN GLOBAL (CNMI) LTD.

By: _____
Name:
Title:

Approved as to Form,

Law Office of Michael Dotts
Attorneys for Imperial Pacific International (CNMI), LLC

_____  03/23/2021
Michael Dotts,                  Date
Attorneys for Imperial Pacific International (CNMI), LLC

Law Office of Juan Lizama
Attorneys for Cui Lie Jie and Imperial Pacific International Holdings, Ltd

_____  03/23/2021
Juan Lizama,                    Date
Attorneys for Imperial Pacific International, Holdings, Ltd


For the Plaintiff:
ELENA GOLDSTEIN
Solicitor of Labor

JANET M. HEROLD
Regional Solicitor

CHARLES SONG,
Senior Trial Attorney

*Boris Orlov*
_____  March 23, 2021
BORIS ORLOV, Senior Trial Attorney   Date
Attorneys for the Plaintiff
U.S. Department of Labor

**AMENDED CONSENT JUDGMENT**                    Page 9 of 10

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

| Security Title, Inc. | Commitment for Title Insurance<br>Adopted 6-17-06 Revised 08-01-2016 |
|---|---|

### Exhibit A

Leasehold estate created by the certain indenture of Ground Lease made by Pedro Kileleman, Lessor, to East Gain Global (CNMI) Ltd., Lessee, dated 23 December 2014 and recorded 23 December 2014 under File No. 14-2085 at Commonwealth Recorder's, Saipan, demising and leasing for a term of fifty-five (55) years beginning 23 December 2014 and ending 22 December 2069, the following described premises to wit:

PARCEL ONE:

H 349NEW-R1, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 10,517 square meters, more or less.

PARCEL TWO:

H 349NEW-1, As Mahetog, Saipan, (which are subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 860 square meters, more or less.

PARCEL THREE:

H 349NEW-2, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 403 square meters, more or less.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and
ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association

File No 20-23737 MP



# Exhibit A

| Security Title, Inc. | Commitment for Title Insurance |
|---|---|
| | Adopted 6-17-06 Revised 08-01-2016 |

PARCEL FOUR:

H 349NEW-3, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 596 square meters, more or less.

PARCEL FIVE:

H 349NEW-4, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 77 square meters, more or less.

PARCEL SIX:

H 349NEW-5, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 800 square meters, more or less.

PARCEL SEVEN:

H 349NEW-6, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 544 square meters, more or less.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice, the Commitment to Issue Policy, the Commitment Conditions, Schedule A, Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions, and a counter-signature by the Company or its issuing agent that may be in electronic form*

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

File No 20-23737-MP



| Security Title, Inc. | Commitment for Title Insurance<br>Adopted 6-17-06 Revised 08-01-2016 |
|---|---|

**PARCEL EIGHT:**

H 349NEW-7, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 11 square meters, more or less.

**PARCEL NINE:**

H 349NEW-8, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 397 square meters, more or less.

**PARCEL TEN:**

H 349NEW-9, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 400 square meters, more or less.

**PARCEL ELEVEN:**

H 349NEW-10, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 266 square meters, more or less.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association.

File No 20-23737-MP



| Security Title, Inc. | Commitment for Title Insurance<br>Adopted 6-17-06 Revised 08-01-2016 |
|---|---|

PARCEL TWELVE:

H 349NEW-11, As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 452 square meters, more or less.

PARCEL THIRTEEN:

H 349NEW-12,As Mahetog, Saipan, (which is a subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 219 square meters, more or less.

PARCEL FOURTEEN:

H 349NEW-16R/W, As Mahetog, Saipan, (all of which are subdivision of Lot No. H 349NEW, which was itself a consolidation of Lot Nos. H-349-2, H-349-3, H-349-4, H-349-5 and H-349-R4, more particularly described on Drawing/Cadastral Plat No. 2104/88 the original of which was recorded 21 April 1988 under File No. 88-1303 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 1,548 square meters, more or less.

PARCEL FIFTEEN:

H 349NEW-18, As Mahetog, Saipan, as more particularly described on Drawing/Cadastral Plat No. 2088/95 the original of which was recorded 19 April 1995 under File No. 95-0957 at Commonwealth Recorder's, Saipan.

For information purpose only, the above referenced map indicates the property contains an area of 3,637 square meters, more or less.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form*

**Copyright 2006-2016 American Land Title Association. All rights reserved.**
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited. Reprinted under license from the American Land Title Association

File No 20-23737-MP



**Security Title, Inc.**  **Commitment for Title Insurance**
**Adopted 6-17-06 Revised 08-01-2016**

PARCEL SIXTEEN:

Leasehold estate created by that certain indenture of Ground Lease made by Bernadita S. Cabrera-Itibus, Lessor, to East Gain Global (CNMI) Ltd., Lessee, dated 22 December 2014 and recorded 23 December 2014 under File No. 14-2078 at Commonwealth Recorder's, Saipan, demising and leasing for a term ending 30 June 2068, the following described premises to wit:

H 348-1, As Mahetog, Saipan, as more particularly described on Drawing/Cadastral Plat No. 2011/87 the original of which was recorded 26 November 1986 under File No. 86-2329 at Commonwealth Recorder's, Saipan.

For informational purposes only, the above referenced map indicates the property contains an area of 2,446 square meters, more or less.

*This page is only a part of a 2016 ALTA® Commitment for Title Insurance issued by Stewart Title Guaranty Company. This Commitment is not valid without the Notice; the Commitment to Issue Policy; the Commitment Conditions; Schedule A; Schedule B, Part I—Requirements; [and] Schedule B, Part II—Exceptions; and a counter-signature by the Company or its issuing agent that may be in electronic form.*

Copyright 2006-2016 American Land Title Association. All rights reserved.
The use of this Form (or any derivative thereof) is restricted to ALTA licensees and ALTA members in good standing as of the date of use. All other uses are prohibited.
Reprinted under license from the American Land Title Association.

File No 20-23740-MP



[Space above for use by Commonwealth Registrar of Corporations]

## East Gain Global (CNMI) Ltd.
### A Commonwealth of the Northern Mariana Islands Corporation

### ACTION AND CONSENT WITHOUT MEETING

The undersigned, constituting the sole director of the shareholder of East Gain Global (CNMI) Ltd. (the "Company"), a Commonwealth of the Northern Mariana Islands corporation, does hereby take and consent to the following action without a formal meeting:

**WHEREAS**, the Company's ultimate beneficial owner is Imperial Pacific International Holdings, Ltd ("IPIH");

**WHEREAS**, IPIH is the one of the defendants of Case 1:19-cv-00007 *Acosta v Imperial Pacific International Holdings Ltd. et al*;

**WHEREAS**, IPIH has entered into the First Amendment to Consent Judgment, which has a remaining balance of $1,478,430.08 to be paid by IPIH jointly and severely with Imperial Pacific International (CNMI) LLC ("IPI"), to the United States Department of Labor ("USDOL");

**WHEREAS**, IPIH intends to use the leases of Flame Tree Terrace, including Lot Number H-348-1 and Lot Number H-349NEW-14, that are owned by the Company as security of the payment of $1,478,430.08 to USDOL;

**WHEREAS**, the leases of Flame Tree Terrace (the "Leases") include the:

> **Ground Lease** made by Pedro Kileleman, Lessor, to East Gain Global (CNMI) Ltd., Lessee, dated 23 December 2014 and recorded 23 December 2014 under File No. 14-2085 at Commonwealth Recorder's, Saipan, demising and leasing for a term of fifty-five (55) years beginning 23 December 2014 and ending 22 December 2069; and
>
> **Ground Lease** made by Bernadita S. Cabrera-Itibus, Lessor, to East Gain Global (CNMI) Ltd., Lessee, dated 22 December 2014 and recorded 23 December 2014 under File No. 14-2078 at Commonwealth Recorder's, Saipan, demising and leasing for a term ending 30 June 2068;

**Exhibit B**

**THEREFORE**, it is:

**RESOLVED**, that the Company hereby approves the pledge of the Leases as a security for the payment of $1,478,430.08 to USDOL under the First Amendment to Consent Judgment for Case 1:19-cv-00007 *Acosta v. Imperial Pacific International Holdings Ltd. et al.* Specifically, East Gain Global (CNMI), Ltd., shall be a signatory to this First Amended Judgment, and expressly agrees and consents to the Consent Judgment and the First Amended Judgment being recorded as first lien against the leasehold parcels of property commonly known as the Flame Tree Terrace.

**FURTHER RESOLVED**, that Ray N. Yumul is authorized to take all steps necessary, including executing any necessary documents on behalf of the Company, including executing the First Amended Consent Judgment, to pledge the Leases for the benefit of the USDOL to secure the payment for Case 1:19-cv-00007 *Acosta v. Imperial Pacific International Holdings Ltd. et al.* Specifically, East Gain Global (CNMI) will cooperate with USDOL to execute and deliver any and all documents required by Security Title, Inc., including but not limited to all necessary corporate resolutions, consents and approvals, within five (5) business days after the entry of the First Amended Consent Judgment, to issue a title insurance policy insuring a first lien position for the lienholder, the USDOL, for the sum of $1,478,430.08.

**FINALLY RESOLVED**, the Company understands, acknowledges and agrees that if there is a default in the payments due under the First Amended Consent Judgment that the security the Company is pledging may be executed on by USDOL and that the leasehold interests will be sold to satisfy the amount due and the Company could lose all rights, title and interests in and to the Leases.

**SO RESOLVED**,

_____
Zheng, Dong Ting, Director of Sole Shareholder
East Gain Global Holding Limited