```
FILE NO.  17-0688
Date: 3/15/17  Time: 1:49
Book:  18   Page: 95

Commonwealth Recorder
```

| | |
|---|---|
| **FOR** | ) |
| | ) |
| **RECORDING** | ) |
| | ) |
| **PURPOSES** | ) |

# GROUND LEASE

**THIS GROUND LEASE** (the "Lease" or "Ground Lease"), is made and entered into on this 14th day of March, 2017, by and between Serafin A. Camacho ("Lessor"), and Green Estate Holdings (CNMI), LLC ("Lessee"), on the following terms:

## WITNESSETH:

In consideration of the rent hereinafter reserved and of the covenants herein contained to be observed and performed, Lessor does hereby demise and let unto Lessee, and Lessee does hereby lease from Lessor, the real property located in Saipan, Northern Mariana Islands, described below.

1. <u>Property Leased</u>

1.1. <u>Description of Premises</u>

Lessor leases to Lessee the following described property:

**Lot No. 463NEW-1**, containing an area of 10,435 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2116/85, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 85-1672 on July 8, 1985,

**Lot No. 463NEW-5**, containing an area of 20,000 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2053/87, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 87-0871 on March 23, 1987,

**Lot No. 463NEW-6**, containing an area of 1,336 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2032/88, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 87-3968 on November 24, 1987,

**Lot No. 463NEW-7**, containing an area of 1,453 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2032/88, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 87-3968 on November 24, 1987,

**Lot No. 463NEW-8**, containing an area of 1,853 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2055/89, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 89-0731 on March 9, 1989, and

**Lot No. 463NEW-9**, containing an area of 5,663 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2055/89, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 89-0731 on March 9, 1989,

**Lot No. 463NEW-10**, containing an area of 4,608 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2055/89, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 89-0731 on March 9, 1989,

**Lot No. 463NEW-R5**, containing an area of 9,973 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2055/89, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 89-0731 on March 9, 1989,

**Lot No. 463NEW-1R/W**, containing an area of 1,875 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2055/89, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 89-0731 on March 9, 1989,

**Lot No. 463NEW-2R/W**, containing an area of 1,341 square meters, more or less, as more particularly described on Drawing/Cadastral Plat No. 2055/89, the original of which was recorded with the Commonwealth Recorder's, Saipan, under File No. 89-0731 on March 9, 1989,

Together with all easements and appurtenances in adjoining and adjacent land, highways, roads, streets, lanes, whether public or private, reasonably required for the installation, maintenance, operation and service of sewer, water, gas, power and utility lines and for driveways and approaches to and from abutting highways or streets for the use and benefit of the above-described parcel of real property, including any improvements now or hereafter situated

thereon (the "Premises").

1.2. Map

As a further description of the leased property hereby conveyed, attached hereto and incorporated by reference herein as Attachment A is a map that shows the approximate extent and location of the Premises.

2. Lessor's Representations and Warranties

2.1. Fee Title

Lessor warrants, covenants, and represents that Lessor is the sole owner of the Premises in fee simple and have the full authority to enter into this Lease. Lessor warrants, covenants, and agrees to defend the leasehold title created hereby in favor of Lessee, including paying Lessee's reasonable attorneys fees and costs of defense if an action is brought challenging Lessor's or Lessee's title. Lessor further represents and warrants that if no executed spousal consent is attached to this Ground Lease, then Lessor is unmarried and no person has any interest in, or any claim to, the Premises by reason of being Lessor's spouse or ex-spouse. Lessor represents and warrants that Lessor is a person of Northern Mariana Descent as that term is defined in the Commonwealth Constitution.

2.2. Quiet Enjoyment

Lessor represents, covenants, and warrants that Lessor shall, upon the commencement of the term of this Lease, place Lessee in quiet possession of the Premises and that Lessee shall lawfully and quietly hold, occupy and enjoy the Premises during the terms of this Lease without hindrance or molestation by Lessor or any person claiming by, through or under Lessor. Lessor warrants, covenants, and agrees to defend Lessee's quiet enjoyment of the Premises, including paying Lessee's reasonable attorneys fees and costs if Lessee is required to defend Lessee's right to quiet enjoyment of the Premises.

2.3. Seisin

Lessor represents, covenants, and warrants that Lessor is seized with the property in an

estate of fee simple and has good right to convey to Lessee the leasehold estate created by this Ground Lease.

2.4. No Encumbrances

Lessor represents, covenants, and warrants that Lessor's title is without encumbrances and the leasehold estate created by this Ground Lease is conveyed hereby to Lessee free and clear, and if any encumbrances exist, Lessor shall cause them to be removed at Lessor's cost and expense.

3. Term of Lease

The term of this Ground Lease shall start upon its recordation and shall end on January 14, 2070, unless sooner terminated as herein provided. This provision of this Ground Lease is material to the parties and no other provision of this Lease shall be construed so as to lengthen the term of this Lease and create a violation of Article XII of the Commonwealth Constitution. This Section however may be reformed if to do so is found necessary to achieve compliance with Article XII.

4. Rent Fully Paid

The total consideration to be paid for the lease of the Premises is Five Hundred Dollars ($500.00) paid to Lessor, Three Million Four Hundred Dollars ($3,400,000.00) paid to the previous lessee for the buyout of the previous lessee's interests in the Premises (as evidenced in the Assignments of Leases recorded as File No. 17-0450 and File No. 17-0451), Four Hundred Twenty Thousand Dollars ($420,000.00) paid to the previous owner of the Premises (as evidenced in the Warranty Deed recorded as File No. 17-0686 ), and the termination of the previous leases of the Premises.

By executing this Ground Lease, Lessor acknowledges that the total consideration was bargained for and sufficient consideration for this Ground Lease, and that all payments, minus tax withheld and paid to the CNMI Division of Revenue and Taxation, have been paid in full.

5. <u>Utilities and Charges</u>

Lessee will pay all charges for water, electricity, telephone and other utilities used upon the Premises during the term of this Lease.

6. <u>Fire and Casualty Insurance</u>

Lessee at Lessee's option and at Lessee's own expense may keep all improvements erected on the Premises insured against loss or damage by fire or other casualty. Any insurance proceeds payable with respect to any loss to any improvements on the Premises shall belong to Lessee and Lessor shall have no right, claim or interest therein.

7. <u>Use of Premises</u>

Lessee may use, improve and develop the Premises or any part thereof for any lawful use or purpose.

8. <u>Streets, Water, Etc.</u>

In order to provide for the more orderly development of the Premises, it may be necessary, desirable or required that street, water, sewer, drainage, gas, power line and other easements and dedications, and similar rights be granted or dedicated over or in portions of the Premises. As one of the moving considerations to Lessee for the execution of this Lease, Lessor shall, upon request of Lessee, join with Lessee in executing and delivering such documents from time to time, and throughout the term of this Lease, as may be appropriate, necessary or required by the several governmental agencies, public utilities, and companies for the purposes of granting such easements and dedications.

9. <u>Assignability and Subleasing/Mortgage Of Lessee's Interest</u>

9.1 <u>Assignment and Subleasing</u>

Lessee may, without consent of or notice to Lessor, assign this Lease or any part hereof and sublet all or a portion of the Premises.

9.2 Mortgage and Other Encumbrance

Lessee may, at any time or from time to time during the term of this Lease, encumber by mortgage or other security instrument, by way of assignment, or otherwise, Lessee's interest under this Lease and the leasehold estate hereby created in whole or in part, without notice to or consent of Lessor.

10. Condominiums

10.1. Election to Build Condominiums

In the event Lessee elects to build condominium apartments or commercial units on the Premises, Lessee shall be entitled to subject its interest in the Premises to a Horizontal Property Regime under any horizontal property regime act(s) then in effect in the Commonwealth of the Northern Mariana Islands and execute and record an appropriate Declaration of Horizontal Property Regime covering the project, together with by-laws, and other instruments required by such law(s).

10.2. Cooperate with Lessee

Lessor agrees to cooperate with Lessee with respect to the establishment of a Horizontal Property Regime, including the provision of all easements necessary thereto, provided that all costs thereof shall be borne by Lessee. Without limiting the generality of the foregoing statement concerning cooperation, Lessor will execute and file with any and all governmental agencies having jurisdiction, any instruments which are necessary or appropriate for the establishment of such Horizontal Property Regime and the recording of all necessary easements required for the benefit of common elements and units of any such condominium project.

10.3. Direct Conveyances

Lessor further agrees that with respect to each apartment or commercial unit in said condominium project it will, at Lessee's election, issue a direct lease of such apartment or commercial unit provided that any such conveyance complies with the requirements of this Ground Lease, does not extend beyond the term of this Ground Lease, and complies with all applicable laws and the CNMI Constitution.

10.4.  Limited Power of Attorney

For the purposes of accomplishing the objectives set forth in the foregoing subsections, or any of them, Lessor hereby appoints Lessee as Lessor's attorney-in-fact and agent (to be irrevocable so long as this Ground Lease remains in full force and effect, and which shall be deemed to be a power coupled with an interest) to execute and deliver (and to record) any documents which may be appropriate, necessary or required to accomplish any of the foregoing objectives, in the name of Lessor, and any such execution and delivery and recordation may be relied upon by any third person. Provided, however, that Lessee shall have no power to sell, encumber, transfer, or in any way affect Lessor's title or reversionary or fee interests in the Premises, or change the terms of this Ground Lease. The purpose of the limited power of attorney is to simply facilitate the development of the Premises during the leasehold term as leasehold condominiums, if Lessee should desire to so develop the Premises.

11.  Unavoidable Delay -- Force Majeure

If either party shall be delayed or prevented from the performance of any act required by this Lease by reasons of acts of God, strikes, lock outs, labor troubles, inability to procure materials, or other cause, without fault and beyond the reasonable control of the party obligated (financial inability excepted) performance of such act shall be excused for the period of the delay, and the period equivalent to the period of such delay, provided, however, nothing, in this section shall excuse Lessee from the prompt payment of any rental or other charge required of Lessee.

12.  Default

Lessee or Lessor shall be in default of this Lease if either of them fails to comply with any terms, provisions or covenants of this Lease, and shall not cure such failure within ten (10) days from and after the date written notice specifying such failure is delivered to the breaching party or, having commenced to remove or to cure such failure within said ten (10) day period, the beaching party thereafter fails to proceed with reasonable diligence to completely remove or cure such failure.

13. <u>Remedies In Event Of Default</u>

13.1. <u>Damages and Specific Performance</u>

Lessee and Lessor in the event of a breach of this Lease by the other shall have grounds for damages or for specific performance. As all rent has been fully paid, a breach by Lessee shall not entitle Lessor to seek Leesee's ejectment or to terminate this Ground Lease. The only remedies for Lessor shall be to recover damages caused by Lessee's breach, or to require through specific performance that Lessee cure the breach.

13.2. <u>No Waiver of Breach</u>

No failure by either Lessor or Lessee to insist upon the strict performance by the other of any covenant, agreement, term or condition of this Lease or to exercise any right or remedy consequent upon a breach thereof, shall constitute a waiver of any such breach or of such covenant, agreement, term, or condition. No waiver of any breach shall affect or alter this Lease but each and every covenant, condition, agreement and the term of this Lease shall continue in full force and effect with respect to any other than existing or subsequent breach.

13.3. <u>Attorney's Fees</u>

In the event either party shall bring any action or proceeding for damages on alleged breach of any provisions of this Lease, or to enforce, protect or establish any right or remedy hereunder, then the prevailing party shall be entitled to recover as part of such action or proceeding, reasonable attorney's fees incurred and court costs.

14. <u>Removal of Improvements, Soil, Etc. Not to Constitute Waste; Crossing Boundaries</u>

Lessee shall have the right at Lessee's sole option at any time during the term of this Lease to alter, demolish or remove any and all improvements on the Premises. Lessee shall also have the right in connection with any development of the property to remove vegetation and to excavate and to remove sand, soil, and other materials from the Premises. In no event shall any such action constitute waste and Lessor hereby releases Lessee from any obligation to restore the Premises to the condition existing upon the commencement date of this Lease. Lessee may also

build, alter, demolish or remove improvements which cross one or more boundary lines of the Premises, provided that Lessee first obtains any required governmental or regulatory approval. Lessor agrees to join, assist, and cooperate with Lessee in applying for any such required approval, provided that Lessor shall incur no expense therefore.

Upon the expiration of the Term of this Lease, Lessee shall surrender the Premises to Lessor in their "as is" condition at the time of surrender. Lessee shall have no obligation to restore the Premises to the condition that existed at the beginning of the Term, or to maintain any improvements on the Premises. All improvements on the Premises shall belong to Lessor at the end of the Term. Lessee may remove all personal property and equipment at the end of the Term.

15.     Development of the Premises and/or Adjoining Property

15.1.   Zoning, Consolidation, Etc.

In the event that Lessee deems it necessary or appropriate to obtain conditional use permits, zoning changes, variances, consolidation or subdivision and plan approval for the Premises, any part thereof and/or such adjoining parcels in which Lessee may now have or hereafter acquire an interest, Lessor agrees to, from time to time, upon request of Lessee, execute such documents, petitions, applications, and authorizations as may be appropriate or required to serve any of the foregoing relating to the establishment, without limitation, of a planned unit development, a condominium, or cooperative apartment arrangements or other development, and provided that Lessor is not required to take any action that will impact the Premises beyond the term of the Lease.

15.2.   Development Restrictions

At Lessee's request, Lessor shall form time to time, execute and deliver or join in the execution and delivery of such documents as are appropriate, necessary or required to impose upon the Premises covenants, conditions, and restrictions providing for the granting of exclusive uses of the premises, or any part thereof, the establishment of common and parking areas, the establishment of party walls, and provisions for the enlargement of the common and parking areas by the establishment of mutual and reciprocal parking rights and the rights of ingress and egress, and other like matters, all of which are for the purposes of the orderly development of the

premises as a commercial unit, provided that such restrictions do not exceed the term of the Lease.

### 15.3. Lessee to Bear Expenses

In all of the foregoing instances in which the assistance of Lessor is required, Lesssor shall be without expense therefor, the costs and expense thereof to be borne solely by Lessee.

### 16. General Provisions

### 16.1. Gender; Headings; Successors Bound

The use of any gender shall include any and all genders and the use of any number shall be construed as singular and plural, as the case may be. The headings of paragraphs herein are inserted only for convenience and reference and shall in no way define or limit the scope of intent of any provision of this Lease. This Lease shall inure to the benefit of and be binding upon all of the parties hereto and their respective heirs, executors, administrators, successors, successors in trust and assigns.

### 16.2. Counterparts

This Lease may be executed in several counterparts, each of which shall be deemed an original, but all of which shall constitute one and the same agreement, which shall be binding upon all parties hereto notwithstanding that all of the parties are not signatories of the same counterpart.

### 16.3. Computation of Time

The time in which any act provided by this Lease is to be done is computed by excluding the first day and including the last, unless the last day is a Saturday, Sunday or holiday, and then it is also excluded. The term "holiday" shall mean holidays specified by the laws of the Commonwealth of the Northern Mariana Islands or declared by executive authority.

### 16.4. Conditions and Covenants

All the provisions of this Lease shall be deemed as running with the land, and construed

to be "conditions" as well as "covenants" as though the word specifically expressing or imparting covenants and conditions were used in separate provisions.

### 16.5. Time of the Essence

Time is of the essence of this Lease, and of each provision.

### 16.6. Entire Agreement

This Lease, together with any attachments or documents identified or referred to herein, contains the entire agreement of the parties with respect to the matters covered herein as of the date of execution hereof, and no other agreement, statement or promise made by any party prior in time to the date of this Lease shall be binding or valid.

### 16.7. Modification and Joint Drafting

This Lease is not subject to modification except in writing, duly signed by the parties to be charged thereunder. This Lease was the product of negotiation and joint drafting, and the rule of construction that ambiguities be construed against the party drafting the document does not apply, and to the extent it might apply, it is waived by both parties.

### 16.8. Further Assurances, Certification, and Estoppel Certificates

Each party shall, without charge, at any time or from time to time hereinafter within ten (10) days after written request of the other, provide a written certification duly signed and acknowledged to the requesting party, the requesting party's mortgagee or purchaser, sublessee or assignee, or any other person, certifying such information as may be requested concerning any supplementation or memorandum to this Lease, the validity, force and effect of this Lease, claims or defenses hereunder, or such other matters as maybe reasonably so requested, including without limitation an estoppel certificate certifying that, as of the date of the estopppel certificate, this Lease is unmodified and in full force and effect (or in full force and effect as modified and stating the modification(s)) and that there are no defaults or defenses existing (or if there is any default or defense, stating the nature and extent thereof). The parties understand and agree that such certifications may be relied upon by third parties. In the event that Lessee requests an estoppel certificate from Lessor and Lessor fails to provide such certificate within

forty five (45) days after the delivery of the request, Lessor shall be deemed to have certified that Lease is unmodified and in full force and effect, and that there are no defaults or defenses existing.

### 16.9. Governing Laws and Forum

The laws of the Commonwealth of the Northern Mariana Islands shall govern the validity, construction, enforcement, and effect of this Lease. Whenever in this Lease any words of obligation or duty are used in connection with either party, such words shall have the force and effect as though framed in the form of express covenants on the part of the party obligated. Any dispute arising out of or related to this Lease, or related to the matters covered by this Lease, shall be subject to the exclusive jurisdiction of the Commonwealth of the Northern Mariana Islands for resolution.

### 16.10. Remedies Cumulative

The various rights, options, elections or remedies of Lessor and Lessee, respectively, contained in this Lease shall be cumulative and no one of them shall be construed as exclusive of any part, or of any other right, priority or remedy allowed or provided for by law or in equity and not expressly waived in this Lease, except where specifically so provided.

### 16.11. Covenant to Execute Additional Instruments

The parties agree to execute and deliver any instruments in writing necessary to carry out the agreement, term, condition, or assurance in this Lease whenever the occasion shall arise and request for such instruments shall be made.

### 16.12. Severability

If any term, provision, or clause of this Lease is to any extent illegal, otherwise invalid, incapable of being enforced, or would render this Lease void, such term shall be excluded to the extent of such invalidity or unenforceability and severed from this Lease as if it had never existed, all other terms hereof shall remain in full force and effect.

16.13. Notices, Requests, and Demands

Except when otherwise required by law, all notices, requests, and demands given under this Lease shall be in writing, addressed to the party to whom the notice, request, or demand is given, and hand delivered or sent by courier service or by registered or certified mail, first class with postage prepaid, to the parties at the following addresses:

To Lessor:	P.O. Box 7002 SVRB
Saipan, MP 96950

To Lessee:	c/o O'Connor Berman Dotts & Banes
P.O. Box 501969
Saipan, MP 96950

17. Arbitration

Any and all matters in dispute under this Ground Lease shall be settled by arbitration as per the rules and regulations of the American Arbitration Association, most applicable to the parties' dispute. The arbitration shall be before a panel of three arbitrators. Lessor shall select one arbitrator, Lessee shall select one arbitrator, and the two arbitrators selected by the parties shall select the third arbitrator. The arbitrators shall enter a reasoned opinion after considering the evidence and arguments of the parties. The opinion of the arbitrators shall be final and binding and enforceable by the courts.

18. Limitations of Covenants and Article XII Applicable

All of the terms of this Lease, and this Lease in its entirety, are subject to the restrictions and limitations set forth in the COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA, as approved by United States Public Law 94-241, 90 Stat. 263 (July 10, 1975), and Article XII of the Constitution of the Commonwealth of the Northern Mariana Islands, as interpreted and applied by the Supreme Court of the Commonwealth of the Northern Mariana Islands, or any court of competent jurisdiction. All terms of this Lease should be interpreted as creating a simple leasehold estate in Lessee for a duration not violative of Article XII. It is the intention of the parties to comply with Article XII, and should any covenant or clause of this Lease be determined to violate Article XII, that covenant or section should be reformed to

comply with Article XII, and if reformation is not possible, said violative covenant or section should be stricken from this Lease, saving all other covenants and sections as they are drafted and binding on the parties.

    18.1.   Further Clarifications

No covenant, clause or section of this Lease is intended to, or should be read to: (a) extend Lessee's tenancy beyond the term stated above that is for a term of fifty five (55) year or less; (b) require in any way Lessor to buy back or compensate Lessee for improvements to the property; (c) restrict or encumber Lessor's reversionary interests; or (d) restrict or control what Lessor may do with Lessor's fee interest (subject only to the estate created by this Lease) before the expiration or termination of this Lease. This Further Clarifications provision is intended to modify any prior section of this Lease that could possibly be construed contrary to this section so as to ensure this Lease complies with the requirements of Article XII of the Commonwealth Constitution.

**IN WITNESS WHEREOF**, the parties have executed this Lease.

**Lessor**

_____
Serafin A. Camacho
Date: __03/14/__ _____, 2017

**Lessee**

By: _____
Xing, Tao
Authorized Representative
Date: _____ _____, 2017

comply with Article XII, and if reformation is not possible, said violative covenant or section should be stricken from this Lease, saving all other covenants and sections as they are drafted and binding on the parties.

### 18.1. Further Clarifications

No covenant, clause or section of this Lease is intended to, or should be read to: (a) extend Lessee's tenancy beyond the term stated above that is for a term of fifty five (55) year or less; (b) require in any way Lessor to buy back or compensate Lessee for improvements to the property; (c) restrict or encumber Lessor's reversionary interests; or (d) restrict or control what Lessor may do with Lessor's fee interest (subject only to the estate created by this Lease) before the expiration or termination of this Lease. This Further Clarifications provision is intended to modify any prior section of this Lease that could possibly be construed contrary to this section so as to ensure this Lease complies with the requirements of Article XII of the Commonwealth Constitution.

**IN WITNESS WHEREOF**, the parties have executed this Lease.

**Lessor**

_____
Serafin A. Camacho
Date: _____ _____, 2017

**Lessee**

By: _____
Xing, Tao
Authorized Representative
Date: _____ _____, 2017

| | | | |
|---|---|---|---|
| **Commonwealth of the** | ) | | |
| **Northern Mariana Islands** | ) | s.s. | Acknowledgement |
| **Saipan** | ) | | |

ON THIS 14th day of _march_, 2017, before me, a Notary Public, in and for the Northern Mariana Islands, personally appeared Serafin A. Camacho, known to me to the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hands and affixed my official seal the day and year last written above.

_____
Notary Public

MA. KRISTINA H. ROMERO
PMB 432 Box 10001, Saipan, MP 96950
Notary Public Reg. No. 762A
BY AND FOR THE COMMONWEALTH
OF THE NORTHERN MARIANA ISLANDS
My Commission Expires: 9/6/18

| | |
|---|---|
| **Commonwealth of the** | ) |
| **Northern Mariana Islands** | )　　s.s.　　**Acknowledgement** |
| **Saipan** | ) |

ON THIS 14th day of March, 2017, before me, a Notary Public, in and for the Northern Mariana Islands, personally appeared Xing, Tao, known to me to the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same as his free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hands and affixed my official seal the day and year last written above.

_____
Notary Public



Page 16

## SPOUSAL CONSENT

I, Lillian C. Camacho, am the spouse of Serafin A. Camacho, and I have read and understand the foregoing Ground Lease and I accept, agree to be bound by, and consent to all of the terms of this Ground Lease.

_____
Lillian C. Camacho
Date: __3/14__ ____, 2017

**Commonwealth of the** )
**Northern Mariana Islands** ) s.s.    Acknowledgement
**Saipan** )

ON THIS __14__ day of __March__, 2017, before me, a Notary Public, in and for the Northern Mariana Islands, personally appeared Lillian C. Camacho, known to me to the person whose name is subscribed to the foregoing instrument and acknowledged to me that she executed the same as her free and voluntary act and deed for the uses and purposes therein set forth.

IN WITNESS WHEREOF, I have hereunto set my hands and affixed my official seal the day and year last written above.

[Notary seal: MA. KRISTINA H. ROMERO, PMB 432 Box 10001, Saipan, MP 96950, Notary Public, By and for the Commonwealth of the Northern Mariana Islands, My Commission Expires: 1/6/18]

_____
Notary Public



Attachment A

